UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
PAUL DOWLAND, et ano.,

                                Plaintiff,


                    -against-                                                11 Civ. 2225 (LAK)


JPMORGAN CHASE BANK, N.A.,

                                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OPINION


Appearances:


                      John J.E. Markham, II
                      MARKHAM & READ
                      *Attorneys for Plaintiffs*

                      John M. Vassos
                      Namita E. Mani
                      MORGAN, LEWIS & BOCKIUS LLP
                      *Attorneys for Defendant*


LEWIS A. KAPLAN, *District Judge.*

                Plaintiffs, two Utah citizens, borrowed $2.4 million from Washington Mutual Bank,

F.A. ("WaMu") to buy an expensive house in Park City, Utah. They bring this diversity action

principally for a declaration that defendant JPMorgan Chase Bank, N.A. ("Chase"), which claims

to hold the deed of trust note, may not foreclose on the theory that Chase neither owns the note nor

is entitled to foreclose under the deed of trust. The matter now is ripe for decision on Chase's

dispositive motion.

*Facts*

*The Proceedings Thus Far*

    *Pleadings*

The complaint alleges that the plaintiffs, Paul and Tina Dowland, purchased a home in Utah in 2007 and for that purpose borrowed $2.4 million from WaMu and executed a note in that amount and a deed of trust in WaMu's favor to secure its repayment.[1]  They then became unable to make the agreed installment payments and, last year, were informed by Chase that it has the right to foreclose on the property under the deed of trust.[2]  They then filed this action, seeking a declaration that "CHASE neither owns the plaintiffs' loan nor any rights under the deed of trust" because, on information and belief:

       (a)    WaMu in 2007 of 2008 sold plaintiffs' loan into a debt pool and was paid in full, leaving WaMu with no rights against the plaintiffs;

       (b)    The investors in mortgage-backed securities issued with respect to the debt pool collectively became the owners of their loan, not Chase;

       (c)    No true beneficiary under the deed of trust ever has declared plaintiffs' loan in default or noticed a foreclosure; and

       (d)    Although Chase bought certain assets from WaMu in September 2008, WaMu previously had sold plaintiffs' loan to the debt pool.[3]

Nowhere does the complaint challenge the authenticity of the note upon which Chase bases its claim

---

[1]    Cpt. ¶¶ 12-13.

[2]    *Id.* ¶¶ 14-15.

[3]    *Id.* ¶¶ 16-21.

or of the endorsement that it bears, a matter discussed further below.

The complaint seeks a declaration that Chase lacks authority to pursue collection of the plaintiffs' loan or to foreclose on the real estate as well as damages for alleged violation of the Fair Debt Collection Practices Act ("FDCPA") and unjust enrichment.

*The Motion*

Chase moved to dismiss the complaint, arguing that the it fails to allege a claim upon which relief may be granted and, alternatively, on the ground that (a) the note is endorsed in blank thus making it a bearer instrument, (b) Chase possesses it, and (c) Chase therefore is entitled to enforce it. Plaintiffs in turn argued that the motion, to the extent that it originally was based on Chase's alternative theory, relied on "factual assertions . . . that . . . impermissibly stray from the proper parameters of" a Rule 12(b)(6) motion.[4] They argued that the Court therefore was obliged either to exclude the material outside the complaint, thus preserving the Rule 12(b)(6) character of the motion, or to convert it into a summary judgment motion under Rule 56. The Court therefore converted the motion, insofar as it rested on Chase's alternative theory, to one for summary judgment, afforded the plaintiffs an opportunity to examine the purported original note, and received further evidence and briefing.

*The Facts*

Plaintiffs concededly signed a promissory note in the principal amount of $2.4 million

---

[4] DI 17, at 2.

4

payable to the order of WaMu.[5]  Chase asserts in its Local Rule 56.1 Statement that Exhibit B to the first affidavit of Ms. Mani[6] is a copy of the note, that its final page is signed by the Dowlands, and that the note is endorsed in blank.[7]  While the Dowlands' Rule 56.1 Statement purports to deny these averments, it cites no admissible evidence that the copy attached to the Mani affidavit is not a true and correct reproduction of the note or that it does not bear their genuine signatures.[8]  In consequence, the fact that the note upon which Chase sues in fact is the note that the Dowlands signed and that it bears their genuine signatures is deemed established for purposes of this motion.[9]  Indeed, the Dowlands do not deny any of the averments of paragraph 5 of Chase's Rule 56.1 Statement, including the averments that (a) the note is endorsed in blank, and (b) the following endorsement appears stamped beneath the Dowlands' signatures:

Pay to the order of

Without Recourse
WASHINGTON MUTUAL BANK, FA

In fact, the real purport of the Dowlands' position actually is that "Chase offers no testimony or affidavit that [the purported endorsement] is what it purports to be" and that it therefore is inadmissible on this motion for summary judgment.

Thus, at the end of the day, the following is clear:

---

[5]     Cpt. ¶¶ 12-13; *compare* Def. 56.1 St. ¶ 4, *with* Pl. 56.1 St. ¶ 4.

[6]     DI 13.

[7]     Def. 56.1 St. ¶ 5.

[8]     Pl. 56.1 St. ¶ 5.

[9]     *See* S.D.N.Y. Civ. R. 56.1.

1.      The Dowlands signed a $2.4 million note in favor of WaMu.

2.      Exhibit B to the Mani affidavit is a true copy of that note.

3.      The original note bears the genuine signatures of the Dowlands.

4.      The original note bears a purported endorsement in blank by WaMu.

*Discussion*

Save for the question raised in terms of the authenticity of the WaMu endorsement, this is a very straightforward case.  The note concededly is genuine.  If the endorsement is entitled to consideration, the endorsement is in blank – that is to say, it's one that "specifies no particular indorsee" – and thus made the note "payable to bearer and . . . negotia[ble] by delivery alone . . . ."[10] Chase concededly possesses the original note and thus its "holder" within the meaning of the Uniform Commercial Code.[11]  A holder may enforce payment in its own name.[12]  In consequence, Chase is entitled to judgment subject only to the authenticity argument.

It is true, of course, that evidence submitted in support of and in opposition to motions for summary judgment must be admissible in evidence, which in appropriate circumstances requires its proponent to satisfy the requirement of authenticity.[13]  And the Court assumes without deciding that the endorsement must meet that requirement.  But that is not a difficult hurdle to surmount.

---

[10]
    N.Y. U.C.C. § 3-204(b).

[11]
    *Id.* § 1-201(20) ("'Holder' means a person who is in possession of . . . an instrument . . . indorsed . . . to bearer . . . .").

[12]
    *Id.* § 3-301 ("The holder of an instrument whether or not he is the owner may . . . [with an exception not relevant here] . . . enforce payment in his own name.").

[13]
    FED. R. CIV. P. 56(c).

The point is governed by Rule 901 of the Federal Rules of Evidence, which requires the proponent to adduce nothing more than "evidence sufficient to support a finding that the matter in question is what the proponent claims," in this case that the stamped endorsement is what it purports to be.  Here, the Dowlands concededly signed the original of the note, which was given in exchange for $2.4 million provided by WaMu, which they used toward the purchase price of their house in Park City, Utah.  The inference that they gave the original executed note to WaMu in closing on the loan is virtually inescapable and surely permissible.  Given WaMu's physical possession of the note, the inference that an endorsement in its name indeed was affixed by WaMu also is at least permissible.

District courts have "broad discretion to determine whether a piece of evidence has been properly authenticated."[14]  The requirement of evidence sufficient to permit a finding that proffered evidence is what it purports to be "may be cleared by 'circumstantial evidence.'"[15]  "The proponent is not required 'to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be.'"[16]

This Court concludes from all the circumstances – including the conceded genuineness of the note itself and of the Dowlands' signatures on it, the virtual certainty of its physical delivery to WaMu, and the content of the endorsement containing WaMu's proper name

---

[14]
    *United States v. Tin Yat Chin*, 371 F.3d 31, 37 (2d Cir. 2004); *see also United States v. Tropeano*, 252 F.3d 653, 661 (2d Cir. 2001).

[15]
    *Tin Yat Chin*, 371 F.3d at 37 (quoting *United States v. Dhinsa*, 243 F.3d 635, 658-59 (2d Cir. 2001)).

[16]
    *Id.* (quoting *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999)).

itself[17] – that Rule 901 has been satisfied here.  The evidence is sufficient to permit a trier of fact to find that the endorsement is what it purports to be.

This of course does not mean that the Dowlands were not free to challenge the reliability of that evidence or to argue alternative explanations.[18]  But they have elected not to do so, placing their entire reliance on the authentication argument.  Accordingly, the Court concludes that there is no genuine issue of material fact with respect to the question whether Chase is entitled to enforce the note and that Chase is entitled to judgment as a matter of law on that point.

This result may be reached by another route as well.  Section 3-307 of the Uniform Commercial Code provides in relevant part as follows:

> "(1)    Unless specifically denied in the pleadings each signature on an instrument is admitted.  When the effectiveness of a signature is put in issue
>
> > (a)    the burden of establishing it is on the party claiming under the signature; but
> >
> > (b)    the signature is presumed to be genuine or authorized except where the action is to enforce the obligation of a purported signer who has died or become incompetent before proof is required."[19]

Here, the signature of WaMu – the endorsement – was admitted unless specifically denied in the pleadings.  Plaintiffs' complaint did not specifically deny WaMu's signature, which arguably was conclusive in and of itself.  But even giving the Dowlands the benefit of a view that their argument concerning the authenticity of the endorsement was a specific denial of the endorsement and sufficient to put its effectiveness in issue, which would be rather doubtful, the result

---

[17]

Consideration of the content of the proffered evidence is entirely appropriate in determining authenticity.  *E.g.*, 5 WEINSTEIN'S FEDERAL EVIDENCE § 901.04[3][a] (2d ed. 2011).

[18]

*Tin Yat Chin*, 371 F.3d at 37.

[19]

N.Y. U.C.C. § 3-307.

would be the same.  Chase would be entitled to the presumption that the endorsement is genuine because it does not seek to enforce the obligation of the purported signer, WaMu,[20] and plaintiffs have adduced no evidence whatever to rebut that presumption.

*Conclusion*

As noted above, the complaint contains three claims for relief – one for a declaratory judgment and two for damages for alleged violation of the FDCPA and for unjust enrichment, respectively.  What has been said already clearly disposes of the first.  As the parties have not addressed the others, the Court will defer any ruling on those for the time being.

In the circumstances, Chase's motion is granted to the extent that partial summary judgment will enter on the first claim for relief declaring and adjudging that the Dowlands' note has become a bearer instrument, that Chase is a holder of that note, and that Chase as a holder is entitled to enforce the note in all respects.  Insofar as Chase's motion might be construed as having been directed to the second and third claims for relief, it is denied without prejudice.

While the Court has not disposed of the second and third claims for relief in order to permit the plaintiffs a full opportunity to be heard on their sufficiency, both seem to depend upon the premise that Chase does not own the note, a proposition that no longer is viable.  As it seems extremely likely that this entire litigation is nothing but an effort to delay collection of a concededly defaulted note, there is no reason why the determination on the first claim should not become final immediately.  Accordingly, the Court expressly determines, pursuant to Fed. R. Civ. P. 54(b), that there is no just reason for delay and directs entry of final judgment declaring the rights of the parties

---

[20] We need not get into the somewhat metaphysical question whether it has died or become incompetent within the meaning of this provision.

as set forth above.  Chase shall submit a proposed judgment no later than April 25, 2012.

       SO ORDERED.

Dated:       April 23, 2012

                                       Lewis A. Kaplan
                              United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)